# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| STATE OF MISSOURI,<br><br>ANDREW BAILEY, in his official capacity as Attorney General of Missouri,<br><br>JOHN R. ASHCROFT, in his official capacity as Secretary of State of Missouri,<br><br>    *Plaintiffs*,<br><br>v.<br><br>MERRICK GARLAND, in his official capacity as Attorney General of the United States,<br><br>KRISTEN CLARKE, in her official capacity as United States Assistant Attorney General for the Civil Rights Division, and<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>    *Defendants*. | Civil Action No.<br><br>**Emergency TRO requested before Election Day** |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

1

## INTRODUCTION

The Department of Justice is set to attempt to regulate elections in Missouri by sending monitors to polling locations in the City of St. Louis without authority. *See* Doc. 1-1, DOJ Press Release 24-1381, at 1–4. It is the State of Missouri, however, that has default "power to regulate elections," a power that absent clear preemption, the States "keep for themselves." *Shelby Cnty., Ala. v. Holder*, 570, U.S. 529, 543 (2013). For security reasons, Missouri limits who can be present in a polling location, and DOJ's identified officials do not satisfy the criteria for admission into a polling location under Missouri law. Mo. Rev. Stat. § 115.409. To prevail, DOJ thus must identify specific statutory authority clearly preempting Missouri law. It has done no such thing.

Instead, DOJ has merely gestured at the fact that it can bring enforcement proceedings under a variety of federal voting laws. But authority to bring an enforcement action is not authority to install poll observers. DOJ notably refuses to identify anything specifically giving it *that* authority. For good reason. There *are* statutes on the books that expressly provide DOJ with authority to install poll observers in state voting locations, but one of those statutes has been declared unconstitutional, 52 U.S.C. § 10303, and the other requires authorization by a court following the filing of an enforcement proceeding, § 10302, conditions which have not occurred.

This is not a first for DOJ; it attempted to do the same during the 2022 general election. *See* Doc. 1-2, DOJ Press Release 22-1192, at 1–4. DOJ recognized its lack of authority to send monitors to Missouri polling places in 2022, which is why DOJ rescinded its plan following a letter from Missouri Secretary of State Jay Ashcroft. *See* Doc. 1, Compl., at 5. Regrettably, DOJ has now repeatedly attempted to intervene, without authority, into the way Missouri conducts elections.

**LEGAL STANDARD**

"[T]he standard for analyzing a motion for a temporary restraining order is the same as a motion for a preliminary injunction." *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022). To obtain a preliminary injunction or temporary restraining order a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Balancing the equities and public interest "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "There is no single factor that is regarded as dispositive; rather, the court should balance all the factors in considering whether the injunction should be granted." *Ng v. Board of Regents of Univ. of Minnesota*, 64 F.4th 992, 997 (8th Cir. 2023).

To prevail, the State need only show "a fair chance, not necessarily greater than fifty percent, that it will ultimately prevail under applicable law." *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1343 (8th Cir. 2024) (internal quotation marks omitted). "In circumstances 'where the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less.'" *Nebraska v. Biden*, 52 F.4th 1044, 1046 (8th Cir. 2022) (citation omitted).

**ARGUMENT**

**I.   Plaintiffs are likely to succeed on the merits.**

**A. Plaintiffs have standing.**

Plaintiffs have standing because DOJ's actions, if permitted to proceed, would violate Missouri law. To secure polling locations, Missouri law prohibits any person from entering a polling location unless they fall into one of several categories, such as voters, minors

3

accompanying an adult in the process of voting, and election judges. Mo. Rev. Stat. § 115.409.[1]

Missouri has a sovereign, Article III interest in its "power to create and enforce a legal code." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601 (1982). As the Fifth Circuit put it in a case affirmed by the Supreme Court, because of this sovereign power, "states may have standing based on (1) federal assertions of authority to regulate matters they believe they control, (2) federal preemption of state law, and (3) federal interference with the enforcement of state law." *Texas v. United States*, 809 F.3d 134, 153 (5th Cir. 2015), *aff'd by an equally divided Court*, 579 U.S. 547 (2016). DOJ's attempt to violate Missouri's law without any clear federal authority infringes that sovereign interest and confers standing.

> **B. Plaintiffs are likely to establish that DOJ lacks authority to interfere with enforcement of Missouri's law about permissible persons in polling locations.**

Missouri has more than a "fair chance" of succeeding on the merits because DOJ has failed to cite any authority permitting DOJ to preempt Missouri's law, nor could DOJ cite any authority. To prevail on the merits of the ultra vires count (Count I), Plaintiffs need only show that "agency action [was] taken without statutory authority" and therefore "is invalid." *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 715 (8th Cir. 1979). To determine if an agency has acted in excess

---

[1] Mo. Rev. Stat. § 115.409 reads in full: "Who may be admitted to polling place. — Except election authority personnel, election judges, watchers and challengers appointed pursuant to section 115.105 or 115.107, law enforcement officials at the request of election officials or in the line of duty, minor children under the age of eighteen accompanying an adult who is in the process of voting, international observers who have registered as such with the election authority, persons designated by the election authority to administer a simulated youth election for persons ineligible to vote because of their age, members of the news media who present identification satisfactory to the election judges and who are present only for the purpose of bona fide news coverage except as provided in subdivision (18) of section 115.637, provided that such coverage does not disclose how any voter cast the voter's ballot on any question or candidate or in the case of a primary election on which party ballot they voted or does not interfere with the general conduct of the election as determined by the election judges or election authority, and registered voters who are eligible to vote at the polling place, no person shall be admitted to a polling place."

of its authority, "[t]he question for a reviewing court is whether in doing so the agency has acted reasonably and thus has 'stayed within the bounds of its statutory authority.'" *Util. Air Regul. Grp. v. E.P.A*, 573 U.S. 302, 315 (2014) (quoting *Arlington v. FCC*, 569 U.S. 290, 297 (2013)). A court may not go searching for statutory authority that could grant an agency authority because courts "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)) (internal quotation marks omitted).

To prevail on the merits of Plaintiffs' arbitrary and capricious claim (Count II), Plaintiffs must show only that DOJ has failed to articulate a "satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 42. This "[C]ourt should not attempt itself to make up [for] deficiencies" because a court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* at 43 (quoting C*henery*, 332 U.S. at 196) (internal quotation marks omitted).

DOJ's actions are outside the bounds of its statutory authority and are arbitrary and capricious because DOJ has failed to identify *any* specific statute giving it authority to displace state law. Plaintiffs acknowledge, of course, that Congress possesses authority to pass certain laws displacing state voting laws. Congress, for example, can pass laws that are "remedial or preventive" to enforce the 15th Amendment (no denial of vote based on race) and the 26th Amendment (no denial of vote based on age) so long as there is "a congruence and proportionality between the injury to be prevented or remedied and the means adopted." *See City of Boerne v. Flores*, 521 U.S. 507, 520, 529 (1997).

The problem is DOJ identifies no such law. DOJ simply gestures (without providing anything more specific) at a handful of voting laws that permit DOJ to bring enforcement actions.

5

But simply citing by name a number of statutes[2] without explaining how or if they apply does not "supply a reasoned basis for the agency's action." *State Farm*, 463 U.S. at 43. That is especially true because authority to bring an enforcement action for a violation of a voting law is not authority to install poll observers contrary to state law.

Indeed, where Congress means to authorize DOJ to install poll observers, Congress knows how to do so. Congress expressly provided for the use of poll observers in two circumstances: neither of which applies here.

First, federal law authorizes federal observers to "enter and attend at any place for holding an election in such subdivision for the purpose of observing"—but that is limited to when "a court has authorized the appointment of observers under section 10302(a)." 52 U.S.C. § 10305. DOJ does not identify any court that has authorized appointment of observers, which makes sense because a court can do so only after "the Attorney General or an aggrieved person institutes a proceeding under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." § 10302. DOJ identifies no enforcement proceeding that has been instituted. DOJ thus cannot rely on this authority.

Second, federal law authorizes federal observers when "the Attorney General certifies" that "the assignment of observers is otherwise necessary to enforce the guarantees of the 14th or 15th amendment." § 10305(a)(2). The problem is twofold: the Attorney General has not made any such certification, and since the Supreme Court's *Shelby County* decision, he *cannot* make a certification. The statute says he can only make a certification "with respect to any political

---

[2] DOJ identifies "the Voting Rights Act, National Voter Registration Act, Help America Vote Act, Uniformed and Overseas Citizens Absentee Voting Act and Civil Rights Acts" as well as "federal criminal statutes that prohibit voter intimidation and voter suppression based on race, color, national origin or religion." Doc. 1-1, Press Release 24-1381, at 3.

6

subdivision named in, or included within the scope of, determinations made section 10303(b)." *Id.* Section 10303, however, is the coverage formula that the Supreme Court struck down as unconstitutional in *Shelby County*. That coverage formula "can no longer be used as a basis for subjecting jurisdictions" to federal observers. *Shelby Cnty*, 570 U.S. at 557. That is because "[t]he formula captures States by reference to literacy tests and low voter registration and turnout in the 1960s and early 1970s. But such test have been banned nationwide for over 40 years," now 50 years. *Id.* at 551.

Thus, Congress has created only limited circumstances where DOJ can install poll observers without a State's consent. But none of those circumstances applies. So DOJ—without citing anything specifically—tries to assert unbounded general authority to install poll observers. DOJ has no authority to do so, and its unreasoned decision is independently arbitrary and capricious. Plaintiffs are likely to succeed on the merits.

## II. Plaintiffs will suffer irreparable harm in the absence of preliminary relief.

DOJ seeks to upend Missouri's constitutional right to prescribe "[t]he Times, Places and Manner of holding Elections." U.S. Const. art. I, § 4, cl. 1. "In most instances, constitutional violations constitute irreparable harm" if a plaintiff can show that the violation "is more than just a 'mere possibility.'" *Morehouse Enter., LLC v. ATF*, 970 F.3d 1010, 1017 (8th Cir. 2023) (quoting *Sessler v. City of Davenport, Iowa*, 990 F.3d 1150, 1156 (8th Cir. 2021)). In cases of a constitutional violations, "to the extent that [a plaintiff] can establish a substantial likelihood of success on the merits of its … claim, it has also established the possibility of irreparable harm as a result of the deprivation." *See Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

The same is true when a State is barred from enforcing its own laws. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a

7

form of irreparable injury." *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 609 (8th Cir. 2020) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)) (brackets adopted).

DOJ's actions infringe Missouri's laws, which prescribe who may be admitted to polling places on Election Day. DOJ personnel fall outside the categories of people allowed in polling places under Missouri law. *See* Mo. Rev. Stat. § 115.409. To be sure, § 115.409 allows for "law enforcement officials at the request of election officials or in the line of duty," but DOJ personnel identified in the press release do not qualify under the state definition of "law enforcement officials." First, it is far from clear this definition includes federal officials at all. When Missouri law refers to federal law enforcement officials, it is very specific. *See, e.g.*, Mo. Rev. Stat. §§ 44.091.1(1), 70.820.8, 304.022.4(1), 556.061(32), 650.520.2. Second, where Missouri law defines "law enforcement officer," with respect to federal officials, it does so in a way that excludes the officials who are relevant here. It defines "law enforcement officer" with respect to federal officials as "federal law enforcement officers authorized to carry firearms and to make arrests for violations of the laws of the United States," not lawyers or civil rights investigators. § 650.520.

**III.     The balance of equities and the public interest favor Plaintiffs.**

The balance of equities and the public interest weigh in favor of Missouri because Missouri already has robust election laws to protect voters, and DOJ has identified no specific voting problems within the City of St. Louis. *See generally* Mo. Rev. Stat. ch. 116 (Suffrage and Elections). "[W]hen balancing the equities, 'the key question is whether the movant's likely harm without a preliminary injunction exceeds the nonmovant's likely harm with a preliminary injunction in place.'" *Missouri v. Biden*, 112 F.4th 531, 538 (8th Cir. 2024) (quoting *Cigna Corp.*, 103 F.4th at 1347). "[T]here can be no … harm to [an agency] when it is prevented from [taking] an unconstitutional [action] because 'it is always in the public interest to protect [constitutional]

8

liberties.'" *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 620 (7th Cir. 2004) (quoting *Connection Distrib. Co.*, 154 F.3d at 288). "Surely, upholding constitutional rights serves the public interest." *Newsom ex rel. Newsom v. Albermarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003).

Missouri shares the general interest in protecting voters and polling locations, which is why Missouri has enacted statutes prescribing who may be admitted to polling places. Additional persons not permitted by Missouri law to be present may cause confusion and disruption. Poll workers have not previously been expecting the appearance of these individuals and have not been trained for these new circumstances. And active questioning by federal poll observers will divert the attention of poll workers from Missourians.

Even if this Court concludes that DOJ has weighty interests on its side (despite identifying none in its announcement), the Supreme Court made clear a few months ago that what ultimately matters is the merits. When States challenge federal actions, often "the harms and equities will be very weighty on both sides," meaning resolution of a preliminary injunction "ultimately turns on the merits." *Ohio v. EPA*, 144 S. Ct. 2040, 2052–53 (2024) (brackets adopted).

9

Date: November 4, 2024

Respectfully Submitted,

**ANDREW BAILEY**
**Attorney General of Missouri**

/s/ *Joshua Divine*
Joshua M. Divine, #69875MO
   *Solicitor General*

Bryce Beal, #74559MO*
   *Assistant Attorney General*
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel. (573) 751-1800
Fax. (573) 751-0774
Bryce.Beal@ago.mo.gov
Josh.Divine@ago.mo.gov

*Counsel for Plaintiff*

**Admission Pending*

**CERTIFICATE OF SERVICE AND COMPLIANCE**

I certify that on November 4, 2024, a true and accurate copy of the foregoing document was sent via email to Sejal Jhaveri (Sejal.Jhaveri@usdoj.gov), an appellate attorney at DOJ who works on Civil Rights voting cases, given the time-sensitive nature of this case. I also certify that formal service will be accomplished as soon as possible.

I further certify that the foregoing document contains 8 pages, exclusive of matters designated for omission.

/s/ *Joshua Divine*

*Counsel for Plaintiffs*