# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| STATE OF MISSOURI,<br><br>ANDREW BAILEY, in his official capacity as Attorney General of Missouri,<br><br>JOHN R. ASHCROFT, in his official capacity as Secretary of State of Missouri,<br><br>    *Plaintiffs*,<br><br>v.<br><br>MERRICK GARLAND, in his official capacity as Attorney General of the United States,<br><br>KRISTEN CLARKE, in her official capacity as United States Assistant Attorney General for the Civil Rights Division, and<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>    *Defendants*. | Civil Action No. 4:24-cv-01473 |

## ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER

This matter is before the Court on Plaintiffs' Motion for a Temporary Restraining Order. On November 1, the Department of Justice announced that federal officials would enter polling places on Election Day in St. Louis to observe those locations. ECF 1-2. The Federal Government announced something similar for another location in Missouri in 2022. ECF 1-3. The Department noted that it enforces a variety of laws related to voting but did not identify any specific law giving

1

it authority to enter polling locations in these jurisdictions. The State of Missouri, its Attorney General, and its Secretary of State sued federal defendants, seeking emergency injunctive relief to prevent federal officials from entering polling locations in Missouri.

The Court finds that a temporary restraining order is warranted under the standard four equitable factors. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Plaintiffs have standing. State law limits who can enter a polling location, Mo. Rev. Stat. § 115.409, and the Department asserts preemption of that statute. Assertions of "federal preemption of state law" are a well-recognized situation where states have standing to challenge federal action. *E.g.*, *Texas v. United States*, 809 F.3d 134, 153 (5th Cir. 2015), *aff'd by equally divided Court*, 579 U.S. 547 (2016).

On the merits, Plaintiffs are likely to succeed on their claim that the Federal Government lacks authority to force states to accept federal officials inside local polling locations in the circumstance relevant here. While validly enacted federal statutes preempt state statutes, Plaintiffs have at least a "fair chance" of proving that no federal law authorizes the Department's actions in the first place. *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1343 (8th Cir. 2024) (requiring only a "fair chance" of success on the merits).

Federal law authorizes Department officials to enter polling locations in two circumstances. One is when "a court has authorized the appointment of observers," 52 U.S.C. § 10305, and the other is when "the Attorney General certifies" that "the assignment of observers is otherwise necessary to enforce the guarantees of the 14th or 15th amendment" in certain jurisdictions subject to federal preclearance requirements. § 10305(a)(2). But no court has authorized any appointment, and the Supreme Court declared the preclearance formula

2

unconstitutional; it "can no longer be used as a basis for subjecting jurisdictions" to federal observers. *Shelby Cnty., Ala. v. Holder*, 570, U.S. 529, 557 (2013).

So the Federal Government instead asserts it can enter under the Americans with Disabilities Act to monitor compliance with that Act, citing a settlement agreement it entered into with a with the Board of Election Commissioners for the City of St. Louis. That runs into several problems, each of which independently justifies relief.

First, the Department appears to be changing its position. Its announcement said it would "Monitor Polls in [St. Louis] for Compliance with Federal Voting Rights Laws." ECF 1-2. Now it says it is monitoring for compliance with the ADA. The agency is stuck with its initial statement; courts must reject "post hoc rationalizations of the agency" designed for litigation. *Dept. of Homeland Sec. v. Regents of the U. of Cali.*, 140 S. Ct. 1891, 1909 (2020).

Second, even assuming the validity of the settlement agreement, the Department fails to identify any text in the ADA that gives the Federal Government authority to preempt state laws restricting the presence of certain nonvoters in voting places. While that language exists in the Voting Rights Act, it does not exist in the ADA. "When Congress includes particular language in one section of a statute but omits it from a neighbor," as Congress did in the ADA, "we normally understand that difference in language to convey a difference in meaning." *Bittner v. United States*, 598 U.S. 85, 94 (2023). Further, the Supreme Court has made clear that "the Framers of the Constitution intended the States to keep for themselves, as provided in the Tenth Amendment, the power to regulate elections." *Shelby Cnty.*, 570 U.S. at 543 (citation omitted). While Congress can preempt that authority in some circumstances, "[t]o displace traditional state regulation in such a manner, the federal statutory purpose must be 'clear and manifest.'" *BFP v. ADR Tr. Corp.*, 511

3

U.S. 531, 544 (1994) (citation omitted). The Voting Rights Act contains sufficiently clear language, but the Department fails to identify anything similar in the ADA.

Third, the Department rests on the settlement agreement it entered into with the Board of Election Commissioners for the City of St. Louis. But the Department cites no authority that would allow itself to aggrandize its power—displacing state authority—through a settlement agreement. In any event, the United States entered into the agreement with the City, not with the State, and it is state law that is at issue. Plaintiffs have made a persuasive case that the city board has no authority to grant a dispensation from state law. Under Missouri law, the city board "has no inherent powers but is confined to those expressly delegated by the sovereign and to those powers necessarily implied in the authority to carry out the delegated powers." *St. Louis Cnty. v. River Bend Estates Homeowners' Ass'n*, 408 S.W.3d 116, 138 (Mo. 2013) (internal quotation marks omitted; brackets adopted). As a local authority created under Chapter 115 of the Missouri Revised Statutes, its power extends only to such policies as are "not inconsistent with statutory provisions." Mo. Rev. Stat. § 115.043; *see also Keller v. City of Fremont*, 719 F.3d 931, 950 (8th Cir. 2013) ("A municipal [agreement] is preempted to the extent that it actually conflicts with state law." (brackets adopted)). Plaintiffs have at least a "fair chance" of showing that the board never had authority to agree to terms that would dispense with the state law requirements at issue here.

In addition, the Court finds based on the limited record that the Department can enforce the Americans with Disabilities Act without being physically present in the polling locations on Election Day. The settlement agreement discusses issues like improper slopes for ramps, fire extinguishers protruding from walls too far, and the like. Settlement Agreement at 23. These are

4

issues the Department can inspect before Election Day or before hours on Election Day, rather than while voters are voting.

The balance of the equities and the public interest do not alter the analysis. Plaintiffs face irreparable harm in the form of being unable to enforce Missouri law. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 609 (8th Cir. 2020) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)) (brackets adopted). In contrast, the Department engaged in delay because it announced its policy the Friday before the election—despite knowing from its similar announcement in 2022 that the Secretary of State would disagree. ECF 1-4. The Department does not appear to have given the Secretary of State any advanced notice. In any event, because both sides raise competing issues on the equities, ultimately what matters is likelihood of success on the merits. When States challenge federal actions, often "the harms and equities will be very weighty on both sides," meaning resolution of a preliminary injunction "ultimately turns on the merits." *Ohio v. EPA*, 144 S. Ct. 2040, 2052–53 (2024) (brackets adopted).

Dated this \_\_\_\_ day of November, 2024

_____
HONORABLE SARAH E. PITLYK,
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF MISSOURI

5