# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

STATE OF MISSOURI, *et al.*,

    *Plaintiffs*,

v.

MERRICK GARLAND, in his official capacity as Attorney General of the United States, *et al.*,

    *Defendants.*

Case No. 4:24-cv-01473

Hon. Sarah E. Pitlyk

# EXHIBIT B

**Addendum and Extension to
January 2021 Settlement Agreement Between the United States of America
and the Board of Election Commissioners for the City of St. Louis**

# Addendum and Extension of
# Settlement Agreement between the United States of America and the Board of Election Commissioners for the City of St. Louis under the Americans with Disabilities Act
# DJ # 204-42-155

1. On January 12, 2021, the United States Department of Justice ("Department") and Board of Election Commissioners for the City of St. Louis ("Board") (collectively, "the Parties") entered into a Settlement Agreement ("Agreement") under Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12131-12134, and the Department's implementing regulation, 28 C.F.R. Part 35. The Agreement resolves allegations that (1) the Board's polling places contain architectural barriers that render the facilities inaccessible to voters with disabilities; (2) the Board fails to provide accessible curbside voting; (3) the Board fails to provide voters with disabilities the same amount of privacy and independence while voting as voters without disabilities; (4) the Board's designated accessible voting machines lack adequate maneuvering space and reach ranges for voters with disabilities; and (5) the Board failed to provide auxiliary aids and services, including headphones, to ensure that the accessibility features of the designated accessible voting machines were functioning on Election Day.

2. The Agreement, which is wholly incorporated by reference herein, has a term of three years and is set to expire on January 11, 2024. *See* Agreement, ¶ 47. This Addendum and Extension ("Addendum") serves to extend the Agreement by eighteen (18) months from January 11, 2024 through July 11, 2025. This Addendum is necessary because the COVID-19 pandemic required the Board to take measures to prevent and mitigate the spread of the virus within its polling places and among its staff and election workers. This included diverting administrative, planning, and operational resources to ensure the safety of elections during COVID-19.

3. This Addendum does not extend the requirements set forth in Paragraphs 30, 39, and 40, and they will terminate on January 11, 2024.

4. Extension of Term: The Parties accordingly agree to extend all provisions of the Agreement except those set forth in Paragraph 3 of this Addendum from January 11, 2024 through July 11, 2025, subject to the additions and modifications identified in Paragraphs 5-20 of this Addendum.

5. Expert: The Parties agree that the Board will retain an Expert to provide technical assistance to the Board as set forth in this Addendum. The term "Expert" used in this Addendum means an individual chosen by the Parties with expertise in the accessibility of polling places under the ADA, including expertise with the ADA Standards for Accessible Design, including the 1991 and 2010 Standards.

6. The Parties have selected Rob Judd, Jensen Hughes, Inc., as the Expert. In the event the Expert cannot fulfill all duties required under the Agreement and this Addendum, the Board and the United States will meet and confer within seven (7) days to decide on a suitable replacement.

7. Remediation Plans: The Parties agree to incorporate the polling place locations identified in Attachment A of this Addendum into Attachment A of the Agreement. All of the Agreement's requirements related to the polling place locations included in Attachment A of the Agreement shall also apply to the polling place locations in Attachment A of this Addendum. The Board shall provide remediation plans, approved or created by the Expert, for the polling place locations in Attachment A of the Agreement and this Addendum to the United States on a rolling, weekly basis with all such remediation plans provided to the United States no later than January 26, 2024.

8. Surveys: The Parties agree that, for all polling place locations that are not included in Attachment A of the Agreement or this Addendum, the Board will conduct a survey using the survey instrument referenced in Paragraph 23 of the Agreement. The Board shall complete and submit all such surveys, approved or created by the Expert, to the United States on a rolling, weekly basis with all such surveys submitted to the United States no later than March 1, 2024.

9. Checklists: The Parties agree that, for all Elections held from January 1, 2024 through July 11, 2024, the Board will provide all copies of the checklists, instructions, and diagrams (collectively, "checklists") required under Paragraph 33 of the Agreement and approved or created by the Expert to the United States no later than thirty (30) days before each Election. The Parties agree that, for all Elections held from July 12, 2024 through July 11, 2025, the Board will provide all checklists required under Paragraph 33 of the Agreement and approved or created by the Expert to the United States no later than ninety (90) days before each Election.

10. The Expert will assess whether the above remediation plans, surveys, and checklists reflect an accurate assessment of accessibility on Election Day of the polling place location. If the Expert and/or United States disputes the accuracy of the remediation plan, survey, or checklist or concludes that the proposed remedial action does not fully address a barrier to accessibility, the Board or Expert shall promptly re-survey the portions of the location in question and re-submit the remediation plan, survey, or checklist to the Expert and/or United States.

11. If the Board asserts that neither remediation nor relocation of a polling place location is feasible, the Board shall provide a report to the Expert for each such polling place location to include the following documented components: (a) list of potentially viable alternative facilities in the same general geographic area, whose owners or operators were contacted, to serve as proposed polling place locations; (b) surveys of the potentially viable alternative facilities where the owners or operators of the locations responded "yes" or "maybe" for the facility's use as polling place location; (c) list of any necessary remediations (including temporary measures) and how they will be placed or implemented for the potentially viable alternative polling place location; (d) list of barriers to access remaining after all remediations are put in place or implemented for each potentially viable alternative polling place location; and (e) if all the polling place locations under consideration include physical barriers that cannot be remediated with temporary measures, a comparative analysis of the number and type of barriers that cannot be remediated with a temporary measure at each polling place location. The Expert shall review the documents and the Board's assertion that

remediation or relocation is not feasible.  Thereafter, the Expert shall provide a report and recommendation to the United States regarding feasibility and location choice.  If the United States agrees that remediation or relocation are not feasible, the Board shall comply with Paragraph 20 of the Agreement.

12. <u>Compliance Reviews</u>: The Parties agree that, for all Elections after the Effective Date of this Addendum, the Board will provide all copies of the Election Day Surveyors ("EDSs") compliance reviews required under Paragraph 35 of the Agreement to the Expert within thirty (30) days after each Election.

13. <u>Expert Reports</u>: The Expert shall prepare a comprehensive report every month for the United States and the Board.  The Expert will analyze and report on all data reflecting the Board's progress in complying with the physical accessibility requirements of the Agreement and this Addendum.  This report shall include the Expert's assessments and recommendations of the Board's proposed remediation plans, surveys, and checklists.  The Expert shall assess the quality and sufficiency of the Board's survey process, creation of checklists of temporary measures, implementation of such remedial measures, and the Board's EDSs compliance reviews.  For any report following an Election, the report shall include an analysis of the Board's compliance in implementing the temporary remedial measures at each polling place location and the Board's Election Day Compliance Review, including Paragraphs 17-21, 25-28 and 33-36 of the Agreement.

14. <u>Training</u>: The Expert will provide training and technical assistance to assist the Board in complying with its obligations under the Agreement and this Addendum.  As part of the training and technical assistance, the Expert may also conduct accessibility surveys with the Board's surveyors.  The Expert will provide the Board with technical assistance relating to any aspect of the physical accessibility of polling place locations as provided for in the Agreement and this Addendum.  The Board shall cooperate fully with the Expert.

15. No later than November 17, 2023, the Expert shall provide the training required in Paragraph 37(a)-(b) of the Agreement to all relevant Board employees, contractors, or vendors who conduct surveys, implement temporary measures, or will be involved in fulfilling the Board's obligations under Paragraphs 7-12 of this Addendum.

16. Nothing in the Agreement or this Addendum should be interpreted to prevent the Board from consulting with the Expert during the survey process or before a survey is completed.  Nothing in the Agreement or this Addendum should be interpreted to prevent the Board or the Expert from consulting with the United States during the survey process or before a survey is completed.

17. All of the costs for the services of and associated with the Expert (including all reasonable expenses incurred by the Expert in the course of the performance of the Expert's duties shall be paid by the Board.

18. The Expert and the United States shall have full access to persons, employees, facilities, buildings, polling place locations, programs, services, documents, data, records, materials, and things that are necessary to assess the Board's progress and implementation efforts with

the Agreement and this Addendum. Upon request of the Expert or the United States, the Board will produce data and other information in a report or tabulated format. The United States and/or the Expert will provide reasonable notice of any visit or inspection.

19. The persons signing for the Board represent that they are authorized to bind Board to this Addendum and agree that the Board shall continue to comply with the obligations set out in the Agreement and this Addendum throughout the term of this Addendum, unless otherwise specified in this Addendum.

20. The Effective Date of this Addendum is the date of the last signature below.

**FOR THE BOARD OF ELECTION COMMISSIONERS FOR THE CITY OF ST. LOUIS**

_____
LEO G. (GARY) STOFF, JR.
Republican Director
The Board of Election Commissioners for the City of St. Louis
300 N. Tucker Blvd.
St. Louis, MO 63101
Telephone: (314) 622-4336

Date: 10/2/2023

_____
D. BENJAMIN BORGMEYER
Democratic Director
The Board of Election Commissioners for the City of St. Louis
300 N. Tucker Blvd.
St. Louis, MO 63101
Telephone: (314) 622-4336

Date: 10/2/23

**FOR THE UNITED STATES OF AMERICA**

REBECCA B. BOND
Chief

ELIZABETH S. WESTFALL
Deputy Chief

_____
ELIZABETH JOHNSON
CHRISTINE KIM
Trial Attorneys
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
Telephone: (202) 307-3543
Facsimile: (202) 305-9775
elizabeth.johnson@usdoj.gov
christine.kim@usdoj.gov

Date: 10/3/23