# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ANDREW BAILEY, *et al.*, | ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 4:24-cv-01473-SEP |
| MERRICK GARLAND, *et al.*, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

Before the Court is Plaintiffs' Motion for Temporary Restraining Order, Doc. [2]. For the reasons set forth below, the motion is denied.

### FACTS AND BACKGROUND

On November 1, 2024, the Department of Justice issued press release number 24-1381 titled "Civil Rights Division Staff Available to Receive Nationwide Reports Throughout Election Day." Justice Department to Monitor Polls in 27 States for Compliance with Federal Voting Rights Laws, Nov. 1, 2024. *See* Doc. [1-1]. The press release announced that DOJ would dispatch "personnel from the Civil Rights Division, other department divisions, U.S. Attorney's Offices and federal observers from the Office of Personnel Management" to monitor the November 5, 2024, general election. *Id*. The press release identified 86 jurisdictions in 27 states in which such personnel would be dispatched. *Id*. One of the jurisdictions identified is the City of St. Louis, Missouri. *Id*.

On November 4, 2024, at 8:20 a.m., Plaintiffs filed this lawsuit, alleging that the presence of DOJ personnel at Missouri polling places on Election Day violates Missouri law, which permits only certain categories of persons to be present in voting locations, including voters, minor children accompanying voters, poll workers, election judges, etc. *See* Mo. Rev. Stat. § 115.409.[1] *See* Doc. [1] at 6. Plaintiffs argue that the federal officials identified in the press

---

[1] Mo. Rev. Stat. § 115.409 reads in full: "Who may be admitted to polling place. — Except election authority personnel, election judges, watchers and challengers appointed pursuant to section 115.105 or 115.107, law enforcement officials at the request of election officials or in the line of duty, minor children under the age of eighteen accompanying an adult who is in the process of voting, international observers who have registered as such with the election authority, persons designated by the election authority to administer a simulated youth election for persons ineligible to vote because of their age, members of the

release as potential poll monitors fall into no category permitted by § 115.409.  *Id*.  Plaintiffs ask the Court to temporarily restrain and permanently enjoin "Defendants and all of their officers, employees, and agents" from entering polling locations in Missouri.  Doc. [1] at 10

On becoming aware of the filing of a motion for a temporary restraining order, the undersigned reached out via email to counsel for both sides.  At approximately 12:06 p.m., counsel for Defendants responded that they were working on resolving the matter with Plaintiffs but would file a response within a few hours if the parties could not reach a resolution.  When no update was provided by 3:30 p.m., the undersigned inquired again and was informed that the parties had not reached an agreement and Defendants wanted to be heard in response to the motion.  The Court called an informal conference with the parties at 4:45 p.m., at which it ordered defense counsel to brief Defendants' opposition by 7:00 p.m. and set a hearing on the motion thereafter.

In their opposition, Defendants argued that the proposed monitoring of the polling places in St. Louis City is authorized by a settlement agreement between the City of St. Louis and the Department of Justice in January 2021 over concerns about compliance with the Americans with Disabilities Act.  *See* Doc. [8-1].  As part of that settlement agreement, the City's Board of Election Commissioners agreed to allow DOJ to monitor for compliance with the Americans with Disabilities Act of 1990, as amended 42 U.S.C. §§ 12101, et seq., including monitoring of polling places on Election Day.  The settlement agreement had a term of three years, and would have terminated in January 2024, but on October 3, 2023, the parties extended the term of the agreement, including the provision allowing monitoring of polling places, through July 11, 2025.  *See* Doc. [8-2].

At 7:43 p.m. the Court conducted a hearing via Zoom with counsel for both parties present.   This Order follows.

---

news media who present identification satisfactory to the election judges and who are present only for the purpose of bona fide news coverage except as provided in subdivision (18) of section 115.637, provided that such coverage does not disclose how any voter cast the voter's ballot on any question or candidate or in the case of a primary election on which party ballot they voted or does not interfere with the general conduct of the election as determined by the election judges or election authority, and registered voters who are eligible to vote at the polling place, no person shall be admitted to a polling place."

**LEGAL STANDARD**

"A plaintiff seeking a preliminary injunction [or temporary restraining order] must establish four factors showing such relief is warranted: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest." *Morehouse Enter., LLC v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 78 F.4th 1011, 1016 (8th Cir. 2023) (quoting *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1015 (8th Cir. 2020)). The third and fourth factors "merge when the Government is the party opposing the preliminary injunction." *Id.* at 1018 (citing *Nken v. Holder*, 566 U.S. 418, 435 (2009)). Plaintiffs "bear[ ] the burden of demonstrating the preliminary injunction is warranted because a preliminary injunction is an 'extraordinary remedy never awarded as of right.'" *Id.* at 1016 (citing *Progressive Techs., Inc. v. Chaffin Holdings, Inc.*, 33 F.4th 481, 485 (8th Cir. 2022)).

While the likelihood of success on the merits is the most important factor, *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011), "failure to demonstrate irreparable harm is a sufficient ground to deny a preliminary injunction," *Phyllis Schlafly Rev. Trust v. Cori*, 924 F.3d 1004, 1009 (8th Cir. 2019). Irreparable harm must be certain and imminent, such that there is a clear and present need for equitable relief. *Iowa Utils. Bd. v. F.C.C.,* 109 F.3d 418, 425 (8th Cir. 1996). Possible or speculative harm is not sufficient. *Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone/Firestone, Inc.,* 61 F.3d 1347, 1355 (8th Cir. 1995).

**DISCUSSION**

On expedited consideration of the parties' arguments, the Court finds that the State of Missouri has not carried the burden of justifying extraordinary relief. Given the preliminary character of the parties' merits arguments, together with the relatively low bar for showing "likelihood of success" at this stage in the litigation, the Court does not find that Missouri has failed to satisfy that part of the TRO standard. Its ruling turns, rather, on the likelihood of irreparable harm and evaluation of the public interest. *See Modern Comput. Sys., Inc., v. Mod. Banking Sys., Inc.*, 871 F.2d 734, 738 (8th Cir. 1989) ("The threshold inquiry is whether the movant has shown the threat of irreparable injury."); *Phyllis Schlafly Rev. Trust v. Cori*, 924 F.3d 1004, 1009 (8th Cir. 2019) (The "failure to demonstrate irreparable harm is a sufficient ground to deny a preliminary injunction."). It is Plaintiffs' burden to persuade the Court "by a clear

showing" that they are likely to suffer irreparable harm in the absence of an injunction and that the public interest favors an injunction. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (a motion for temporary restraining order "may issue only when the movant carries its burden of persuasion by a clear showing"). They have not done so.

In practical terms, the expected harm is monitoring by two individuals at one polling place to ensure compliance with the Americans with Disabilities Act, as contemplated by an agreement that has been in place for several years, and as already done at least twice without incident. *See* Doc. [8-3]. Plaintiffs correctly point out that the other side of the balance of equities is roughly equivalent: Defendants would be harmed, at most, by the injunction of two ADA enforcers from a single polling place. But Plaintiffs have the burden of persuasion in the context of a TRO. And the Court is not persuaded that the balancing of the equities really is a draw. The harms to persons with disabilities that led to the Settlement Agreement and the presence of federal observers are documented and uncontested, whereas the harms that the State of Missouri anticipates are speculative—a defect underscored by the fact that similar observers have been present at least twice and their presence apparently went unnoticed.

Being prevented from enforcing its election laws may also be a harm to the State of Missouri, but that harm also has a counterweight in the United States' interest in enforcing the ADA. Based on the parties' arguments thus far, the Court is not persuaded that the public's interest in enforcement of Missouri's election laws, in the absence of any non-speculative threat to election integrity, outweighs the public's interest in the enforcement of the American with Disabilities Act in response to documented harms.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Temporary Restraining Order, Doc. [2], is **DENIED**.

Dated this 4th day of November, 2024.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE