**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| STATE OF MISSOURI, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 4:24-cv-01473-SEP |
| | ) |
| PAMELA BONDI, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**<u>MEMORANDUM AND ORDER</u>**

Before the Court is Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Docs. [22]; [22-1]. The issues are fully briefed. For the reasons set forth below, the motion is granted.

**FACTS AND BACKGROUND[1]**

On November 1, 2024, the Department of Justice (DOJ) issued a press release (2024 press release) stating that it would "monitor compliance with federal voting rights laws in 86 [named] jurisdictions in 27 states for the Nov. 5 general election." Doc. [1-2] at 1. St. Louis, Missouri was one of those jurisdictions. *Id.* at 2. The 2024 press release provided various statutory authorities for the monitoring, including the Americans with Disabilities Act (ADA). *Id.* at 3. Prior to the 2024 election, Missouri jurisdictions appeared in similar press releases a limited number of times, with the most recent one in 2022. *See* Doc. [1-3]. The 2022 press release listed Cole County, Missouri as a jurisdiction that DOJ would monitor during elections. *Id.* at 3. Ultimately, DOJ did not send any monitors to Cole County polling places upon the request of the Missouri Secretary of State, who claimed that DOJ was not authorized to send polling monitors in Missouri. *See* Doc. [1-4].

On November 4, 2024, Plaintiffs sued to enjoin DOJ from sending polling monitors to polling places in Missouri during the general election. *See* Doc. [1]. The Complaint stated two claims under the Administrative Procedure Act (APA): (1) lack of statutory authority; and (2) arbitrary and capricious action. *Id.* ¶¶ 30-47. For the lack of statutory authority

---

[1] For purposes of this motion, the Court takes the factual allegations in the Amended Complaint, Doc. [1], to be true. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

claim, Plaintiffs assert that "DOJ has not identified a statutory authority under which any of the actions set to take place would be authorized." *Id.* ¶ 33.  For the arbitrary and capricious action claim, Plaintiffs allege that DOJ has failed to satisfactorily explain its actions. *Id.* ¶¶ 40-47.  Plaintiffs seek declaratory and injunctive relief to bar the "actions outlined in the press release." *Id.* ¶¶ A-E.

Simultaneously, Plaintiffs moved for a temporary restraining order (TRO), asserting that Mo. Rev. Stat. § 115.409 bars DOJ personnel from monitoring polling places in Missouri. *See* Docs. [2], [3].  In response, DOJ explained that the St. Louis monitoring was based on a settlement agreement made in 2021 "between the United States and the St. Louis Board of Election Commissioners under Title II of the [ADA]," and that the agreement explicitly permitted monitoring on election days.  Doc. [8] at 1.  The 2021 settlement agreement was based on "substantiated complaints" alleging noncompliance with the ADA in St. Louis polling places.  Doc. [8-1] ¶ 4.  The St. Louis Board of Election Commissioners (Board) resolved the investigation by agreeing to comply with instructions in the 2021 settlement agreement. *See, e.g.*, *id.* ¶¶ 11, 16-39.  The Board further agreed to allow "the United States [to] review compliance with this Agreement at any time" including "providing the United States with timely access to polling places (including on Election Day)." *Id.* ¶ 46. In 2023, the parties amended the 2021 settlement agreement to expire in July of 2025. Doc. [8-2] ¶ 2.

The TRO motion was denied by the Court during a hearing.  Doc. [10].  Plaintiffs then filed a "notice of intent to continue litigation after election day" and asked the Court not to dismiss the case as moot.  Doc. [12] at 1.  Plaintiffs argued that for "two consecutive federal elections" the United States "announced that they would send federal officials into state polling places, and they have continually refused to provide Plaintiffs with information about those plans." *Id.* at 1-2.  Plaintiffs argue that "[t]he legal issues presented [here] are capable of repetition, yet evade review." *Id.* at 2.

In December 2024, DOJ terminated the settlement agreement with the Board due to DOJ's determination of "durable compliance" under the terms of the agreement.  Docs. [22-2] ¶¶ 6-8; [8-1] ¶ 48 ("This Agreement or a distinct, severable part of the Agreement will terminate earlier than three years if the United States determines that the Board has

2

demonstrated durable compliance with Title II of the ADA and this Agreement, or with that distinct, severable part, as applicable.").

Defendants now ask that the Court dismiss this case on the grounds that the underlying controversy is moot, arguing that Plaintiffs cannot establish that either exception to mootness applies. *See* Doc. [22-1].

## LEGAL STANDARD

"To invoke the jurisdiction of this [C]ourt, the litigants must present an 'actual, ongoing' controversy within the meaning of Article III of the Constitution." *Iowa Prot. & Advoc. Servs. v. Tanager, Inc.*, 427 F.3d 541, 543 (8th Cir. 2005) (quoting *Deakins v. Monaghan,* 484 U.S. 193, 199 (1988)). "To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Abdurrahman v. Dayton*, 903 F.3d 813, 817 (8th Cir. 2018) (quoting *Davis v. FEC*, 554 U.S. 724, 732 (2008)). "The controversy must be one for which the court can grant specific and conclusive relief." *Ark. AFL-CIO v. F.C.C.*, 11 F.3d 1430, 1435 (8th Cir. 1993) (en banc). "Occasionally, due to the passage of time or a change in circumstance, the issues presented in a case will no longer be 'live' or the parties will no longer have a legally cognizable interest in the outcome of the litigation." *Id.* "A case that no longer presents a live case or controversy is moot, and a federal court lacks jurisdiction to hear the action." *Minn. Humane Soc'y v. Clark*, 184 F.3d 795, 797 (8th Cir. 1999). "[M]ootness, however it may have come about, simply deprives [the court] of [its] power to act; there is nothing for [it] to remedy." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998). "Further, if this case is indeed moot, [the court] must refrain from reaching the merits because any opinion issued would be merely 'advisory' and rest on hypothetical underpinnings." *Missouri ex rel. Nixon v. Craig*, 163 F.3d 482, 484 (8th Cir. 1998). When analyzing mootness, courts focus only on the claims raised in the complaint, even if the "factual allegations may form the basis of another lawsuit." *Prowse v. Payne*, 984 F.3d 700, 703 (8th Cir. 2021).

"Notwithstanding [a] finding of mootness, [a court] may still decide a case on its merits if the controversy in the case is 'capable of repetition yet evading review.'" *McCarthy v. Ozark Sch. Dist.*, 359 F.3d 1029, 1036 (8th Cir. 2004) (quoting *Ark. AFL-CIO,* 11 F.3d at 1435). This exception has two prongs that must be satisfied: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration,

and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Whitfield v. Thurston*, 3 F.4th 1045, 1047 (8th Cir. 2021) (alteration in original) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). "[A] mere physical or theoretical possibility is insufficient to overcome the jurisdictional hurdle of mootness." *Van Bergen v. Minnesota*, 59 F.3d 1541, 1547 (8th Cir. 1995). Where "the likelihood of repetition is only speculative," the exception cannot be satisfied. *Roberts v. Norris*, 415 F.3d 816, 819 (8th Cir. 2005). The party invoking this exception bears the burden of demonstrating that it applies. *Whitfield*, 3 F.4th at 1047.

Further, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). A defendant may not "automatically moot a case simply by ending its unlawful conduct once sued." *Rinne v. Camden Cnty.*, 65 F.4th 378, 386 (8th Cir. 2023) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). The standard used by the Eighth Circuit "for determining whether a case has been mooted by the defendant's voluntary conduct is stringent:  a case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur." *Young v. Hayes*, 218 F.3d 850, 852 (8th Cir. 2000) (citation modified). "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness." *Felts v. Green*, 91 F.4th 938, 941 (8th Cir. 2024) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)).

**DISCUSSION**

### I.      <u>There is no longer a live controversy.</u>

In determining whether there is an ongoing controversy, the Court looks to the Complaint. *Prowse*, 984 F.3d at 703 (declining to consider claims not made in the complaint when considering whether a lawsuit was moot). Plaintiffs allege two counts under the APA that both challenge the "actions set forth in the [2024] press release." Doc. [1] ¶¶ 38, 47. Specifically, Plaintiffs challenge "DOJ's decision to send staff to polling places in Missouri to monitor the November 5, 2024, general election," and Plaintiffs request that the Court hold "the actions outlined in the press release" as unlawful and permanently enjoin Defendants from taking *those* actions. *Id.* ¶¶ 2, C, D. The date of the election has

4

long passed, and there is no act this Court could take to resolve the particular controversy that gave rise to the Complaint.  *See Ark. AFL-CIO*, 11 F.3d at 1435.  Thus, "the question sought to be adjudicated has been mooted by subsequent developments."  *State of S.D. v. Hazen*, 914 F.2d 147, 150 (8th Cir. 1990).

## II.   <u>Neither mootness exception applies.</u>

Plaintiffs argue that the dispute is nevertheless not moot because it satisfies both the capable-of-repetition-yet-evading-review exception and the voluntary cessation exception.  *See* Doc. [26].  The Court disagrees.

### A.  The capable-of-repetition-yet-evading-review exception does not apply.

To satisfy the capable-of-repetition-yet-evading-review exception, Plaintiffs must show that "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again."  *Whitfield*, 3 F.4th at 1047.  Plaintiffs are unable to satisfy either prong.

First, Plaintiffs have not shown that the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration.  "[T]he focus of [the short duration] analysis . . . is not on the length of time over which the particular action challenged occurred."  *Hickman v. Missouri*, 144 F.3d 1141, 1143 (8th Cir. 1998) (citing *Clark v. Brewer*, 776 F.2d 226, 229 (8th Cir. 1985)).  "Rather, the proper inquiry is whether the [challenged] activity is *by its very nature short in duration*, so that it could not, or probably would not, be able to be adjudicated while fully alive."  *Id.*  (alteration in original).  Here, Plaintiffs argue that Defendants mischaracterize the focus of the complaint by referring to the 2021 settlement agreement, which the complaint does not expressly mention.  Doc. [26] at 4.  Plaintiffs argue that the controversy concerns the "Federal Government's authority to send in federal poll monitors, contrary to Missouri law, without clear federal authority preempting state law," and because the Federal Government provides short notice prior to sending poll monitors, the issue is unable to be fully litigated before the election is complete.  *Id.* at 4.

While the Complaint may not have mentioned the 2021 settlement agreement, the conduct objected to in the Complaint—i.e., election monitoring in November 2024—was

based on that agreement, *see* Docs. [1-2] at 2; [8-3] ¶ 9, which had been in effect for nearly three years before the 2024 press release. *See* Doc. [8-1]. At any point during those three years, Defendants could have challenged the validity of the 2021 settlement agreement under Missouri law. Because the Secretary of State, as the "chief election authority in Missouri," Doc. [1] ¶ 21, could have challenged the 2021 settlement agreement's authorization of polling monitors in St. Louis at any time over those three years, the duration of the issue was not too short to be fully litigated prior to its cessation or expiration.

Even if Plaintiffs could establish that the issue was too short in duration to be fully litigated before its cessation, they have not demonstrated a reasonable expectation that they will be subjected to the same action again. DOJ's only stated reason for including St. Louis in the 2024 Press Release was the settlement agreement. Doc. [8-3] ¶ 9. The settlement agreement was terminated in December of 2024, thus terminating DOJ's putative authorization to send monitors to polling places in St. Louis. Doc. [22-2] ¶¶ 6-8. Because St. Louis was the only jurisdiction in Missouri that was included in the 2024 press release, Doc. [1-2] at 2, and the authorization for those monitors has now expired, there is no existing reason to fear repetition of the events alleged in the Complaint. Where "the likelihood of repetition is only speculative," the exception is not satisfied. *Roberts*, 415 F.3d at 819.

The events of the 2022 General Election in Cole County reinforce the Court's conclusion. As they did in 2024, DOJ released a press release in 2022 that included Cole County in a list of jurisdictions that DOJ intended to monitor during election day. Doc. [1-3] at 3. After the Missouri Secretary of State objected, DOJ did not send monitors to Cole County. *See* Doc. [1-4]. Given the expiration of the 2021 settlement agreement and DOJ's deference to the Missouri Secretary of State in the absence of such an agreement, Plaintiffs have not shown a reasonable expectation that they will again be subjected to unwanted monitoring of polling places by DOJ. Accordingly, the capable–of-repetition-yet-evading-review exception does not apply.

### B. The voluntary cessation exception does not apply.

When "[t]he expiration [of a challenged action] was predetermined . . . the voluntary cessation exception to mootness . . . does not apply." *Rinne*, 65 F.4th at 386 (quoting

6

*Already,* 568 U.S. at 91).  Here, the 2021 settlement agreement had been set to expire in July of 2025.  Doc. [8-2] ¶ 2.  Although Defendants voluntarily terminated the settlement agreement before the expiration date, Doc. [22-2] ¶¶ 6-8, they have shown "that the allegedly wrongful behavior could not be reasonably expected to recur."  *Young*, 218 F.3d at 852 (citation modified).  The only Missouri jurisdiction included in the 2024 press release was St. Louis.  Doc. [1-3] at 2.  Defendants have shown that St. Louis was included in the 2024 press release only because of the 2021 settlement agreement, which would have expired before the next national election by its own terms.  Doc. [8-3] ¶ 9.  And since the Missouri Secretary of State's objection to the 2022 press release, DOJ has not sent polling monitors to Missouri under any authority other than the settlement agreement.  Plaintiffs present no evidence that DOJ would do so again.  Defendants have met their burden of persuading the Court that there is no reasonable expectation that the allegedly wrongful behavior will recur.  Therefore, the voluntary cessation exception does not apply.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, Doc. [22], is **GRANTED**.

A separate Order of Dismissal will accompany this Order.

Dated this 31st day of March, 2026.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

7